UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Zikar Holdings, LLC, *et al.*, | Case No. 24-CV-03721 (JMB/SGE) |
| Plaintiffs, | |
| vs. | |
| City of Lino Lakes, Minnesota; *et al.*, | |
| Defendants. | |

**DEFENDANT RUHLAND'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

In the spring of 2024, Defendant City Council Member Michael Ruhland ("Ruhland") proposed the City of Lino Lakes (the "City") adopt an interim ordinance/moratorium after he became concerned two large-scale developments would soon be fast-tracked in the northwest quadrant of the City; a development site presenting significant planning and environmental challenges. Ruhland's primary concern was for the City's water supply infrastructure, the viability of which was rendered uncertain by pending litigation. Given these uncertainties, and the long-term importance development would have in a key gateway to the City, Ruhland proposed a strategic pause to ensure the City responsibly and thoughtfully planned for the future growth.

1

In what has unfortunately become all too commonplace today, many members of the public responded to Ruhland's proposal with self-righteousness. Some viewed Ruhland's legitimate concerns as an opening to advance their own issues and advocate for their own objectives. Others cast aspersions on Ruhland, without making the slightest effort to understand his mind or his concerns.

In bringing this action, and this motion, Plaintiffs Zikar Holdings LLC, Jameel Ahmed, and Faraaz Mohammed, ("Plaintiffs") double-down on this latter approach by labeling Ruhland Islamophobic, and requesting the Court restrain him from performing the legislative duties the citizens of Lino Lakes duly elected him to perform. Plaintiffs' Motion for a Preliminary Injunction, however, is a thinly-veiled attempt to manipulate the outcome of future actions before the Lino Lakes City Council, by eliminating what it perceives as opposition. This tactic should fail because Plaintiffs cannot demonstrate irreparable harm or any possibility their claims against Ruhland will succeed on the merits as required for injunctive relief. The equities do not favor Plaintiffs' requested preliminary injunction and it is not in the public interest. For either of these reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction.

## STATEMENT OF FACTS

Defendant Ruhland adopts by reference the Statement of Facts presented by the City of Lino Lakes.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Beber v. NavSav Holdings, LLC*, 118 F.4th 921, 928 (8th Cir. 2024). "A plaintiff seeking a preliminary injunction must establish[:]"

(1) "that he is likely to succeed on the merits,"
(2) "that he is likely to suffer irreparable harm in the absence of preliminary relief,"
(3) "that the balance of equities tips in his favor, and"
(4) "that an injunction is in the public interest."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

Plaintiffs fail to carry their burden with regard to each of the foregoing preliminary injunction elements. Plaintiffs are unlikely to succeed on the merits or suffer irreparable harm. Indeed, as it concerns Plaintiffs' claims against Defendant Ruhland—the focus of this memorandum[1]—Plaintiffs' claims are certain to fail. Similarly, neither the balance of equities, nor the public interest weighs in favor of an injunction here.

---

[1] Defendant Ruhland incorporates and adopts the City of Lino Lakes' and Defendant Christopher Lyden's arguments in opposition to Plaintiffs' Motion for a Preliminary Injunction, and here focuses solely on the claims and purported bases for equitable relief asserted against Defendant Ruhland.

## I. PLAINTIFFS' CLAIMS AGAINST DEFENDANT RUHLAND ARE CERTAIN TO FAIL.

Plaintiffs face a difficult burden in proving their likelihood of success, because the City's interim ordinance is the primary target of both their claims and the current motion. *See generally*, *Doc. #15*. As the Supreme Court phrased this burden: "A plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits." *Winter*, 555 U.S. at 20 (emphasis added). Here, that requirement means exactly what it says: Plaintiffs must prove their success is *likely* (i.e., greater than or equal to 75%). That requirement means exactly what it says here because Plaintiffs primarily attempt to enjoin duly enacted legislation. *See Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008).

In addition to this primary objective, however, Plaintiffs also seek to restrain Defendant Ruhland "from participating in any City Council deliberations regarding, or voting on, any application submitted by Plaintiffs or anyone acting in concert with Plaintiffs, including any decision or application related to the proposed Madinah Lakes development." *Doc. #10* at 2 ¶2. While this request is even more extreme than the equitable relief Plaintiffs request concerning the interim ordinance, it is nevertheless subject to a less stringent standard. *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) ("In considering the likelihood of success on the merits, a movant must show that it has at least a

4

'fair chance of prevailing.'"); *Planned Parenthood v. Rounds*, 530 F.3d at 732 (8th Cir. 2008) ("[D]istrict courts should still apply the familiar 'fair chance of prevailing' test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes."). Though Plaintiffs need only show a *fair chance* of prevailing (i.e., greater than or equal to 50%) with regard to its claims against Defendant Ruhland, this difference is inconsequential because Plaintiffs' claims are certain to fail.

Plaintiffs' claims against Ruhland are certain to fail for many reasons. Most notably, Ruhland is entitled to legislative immunity from all of Plaintiffs' claims. Even if Ruhland was not absolutely immune, Plaintiffs failed to state any viable claim against him. While Plaintiffs included Defendant Ruhland as a party to manipulate the outcome of future actions before the Lino Lakes City Council, Plaintiffs' claims against Ruhland are certain to fail and Ruhland's dismissal from this action is a foregone conclusion.

**A. Ruhland is entitled to absolute legislative immunity.**

"The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo–American law." *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998). "Recognizing this venerable tradition," the Supreme Court has "held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Id.* at 49.

"[L]egislators were entitled to absolute immunity from suit at common law" and "Congress did not intend the general language of § 1983 to 'impinge on a tradition so well grounded in history and reason.'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 375 (1951)). "Because the common law accorded local legislators the same absolute immunity it accorded legislators at other levels of government, and because the rationales for such immunity are fully applicable to local legislators," the Supreme Court has also held "that local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities." *Id.*

Like the name suggests, absolute immunity applies absolutely and without qualification. As such, neither "improper motive" nor "unethical conduct" will limit or "defeat the protection of absolute immunity." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). Moreover, the immunity is not lost simply because an official makes "an unconstitutional or unlawful decision." *Mayorga v. Missouri*, 442 F.3d 1128, 1131 (8th Cir. 2006).

Accordingly, "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity . . . stripped of all considerations of intent and motive." *Bogan*, 523 U.S. at 54–55. Actions introducing, debating,

6

considering, and passing an ordinance—the actions of Defendant Ruhland at issue here—are "quintessentially legislative." *Id.* [2]

Absolute legislative immunity is not limited to damages claims, but extends to claims seeking a purely equitable remedy. *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980). Likewise, absolute legislative immunity is not limited to claims under 42 U.S.C. § 1983, but extends to claims under the FHA. *See, e.g.*, *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960-964 (9th Cir. 2010). This is because "Congress legislates against a background of common-law adjudicatory principles, and it expects those principles to apply except when a statutory purpose to the contrary is evident." *Minerva Surgical, Inc.*

---

[2] Multiple courts across the circuits have found municipal officials are entitled to legislative immunity for decisions related to the enactment of moratoriums. *LaConner Assocs. Ltd. Liab. Co. v. Berg*, 73 Fed. Appx. 994, 996 (9th Cir. 2003) (affirming dismissal based on legislative immunity pertaining to moratorium ordinance halting development); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392-93 (11th Cir. 1993), cert. denied, 114 S.Ct. 1400 (1994)(held city council members were absolutely immune for rezoning property and adopting construction moratorium ordinances because these are legislative actions.); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1012 (11th Cir. 1992) (finding county commissioners were entitled to absolute immunity for enacting resolution placing temporary moratorium on general application on issuance of mobile home permits); *Highview Properties D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 27 (S.D.N.Y. 2022) (finding town supervisor and town board members were entitled to absolute immunity from claims challenging enactment of moratorium which had the effect of preventing the development of land which targeted Hasidic Jews); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F.Supp.3d 459, 492 (S.D.N.Y. 2015) (village board of trustees member voting for moratorium was engaged in legislative action and entitled to absolute immunity).

*v. Hologic, Inc.*, 594 U.S. 559, 572 (2021)(internal marks and quotation omitted). "[C]ongressional silence often reflects an expectation that courts will look to the common law to fill gaps in statutory text, particularly when an undefined term has a settled meaning at common law." *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 447 (2003). "Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952). If "Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 501 (1986). "Thus, where a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

Ruhland is entitled to absolute legislative immunity from all of Plaintiffs' claims. Therefore, Plaintiffs are not entitled to a preliminary injunction because the claims against Ruhland are certain to fail.[3] Even if Ruhland were not immune from

---

[3] Another glaring issue with Plaintiffs' request for injunctive relief is their request to prohibit Ruhland from acting upon future unknown applications by Plaintiffs. Beyond the pure speculative nature of the unknown application, there is no case law which supports such a request. If such case law existed, certainly Plaintiffs would have included it in their memorandum. However, their memorandum lacks any case law which supports this proposition. Thus, this request must be rejected.

8

Plaintiffs' claims—which he is—Plaintiffs' claims against him would inevitably fail for multiple other reasons.

**B. Plaintiffs failed to assert a viable claim against Ruhland even in the absence of immunity.**

According to Plaintiffs, "Members of the City Council exuded anti-Muslim bias." *Doc. #15* at 25. As purported support for this scurrilous allegation, Plaintiffs point out the following with regard to Defendant Ruhland:

- Ruhland proposed a moratorium on residential development "because he was concerned about Lino Lakes' water infrastructure and a lawsuit involving White Bear Lake." *Doc. #9* at 17 ¶91.
- At an April 1, 2024, City Council work session, Ruhland proposed the City provide expanded public notice for large-scale development proposals beyond the minimum required by state law. *Doc. #9* at 20 ¶108.
- When Ruhland introduced the moratorium proposal, at the same meeting, he reiterated it was based on his concern regarding the impact of new developments on existing water infrastructure. *Doc. #9* at 20-21 ¶¶109-110.
- During a June 24, 2024, City Council meeting, Ruhland reiterated the moratorium proposal is not, and has never been, an attempt to block any development in the City, but a strategic pause to ensure responsible and thoughtful planning for future growth. *Doc. #9* at 24-25 ¶¶127, 131.
- During a July 1, 2024, City Council meeting, Ruhland stated he did not have any comments on Plaintiffs' concept development plan and had already viewed Plaintiffs' presentation at other meetings, but if the full Council would like to hear the presentation that is ok. *Doc. #9* at 26 ¶¶135.
- During a July 8, 2024, City Council meeting Ruhland spoke to clear up misconceptions about the moratorium—which he had consistently explained was a strategic pause to ensure responsible and thoughtful planning for future growth—and misinformation circulated by the Minnesota Chapter of the Council on American-Islamic Relations. *Doc. #9* at 28 ¶¶137.C.
- On July 11, 2024, Ruhland was seen in public with an individual who publicly advocated against Plaintiffs' development proposal. *Doc. #9* at 29

9

¶¶144. Entirely unrelated and distinct from Ruhland's basis for proposing the moratorium, this individual—an immigrant with multiple Muslim family members—opposed the development out of segregation concerns. Dan Barry, *A Battle Over a Farm, a Mosque and the Moral High Ground*, The New York Times, (Aug. 4, 2024).[4]

When these facts—not Plaintiffs' editorialization of them—are considered, two things should immediately be clear.

1. There is no basis to infer Ruhland acted with discriminatory animus.

As an initial matter, Ruhland's intent or motive is irrelevant because Plaintiffs cannot simply focus on the purported motives "of just one or two City officials or councilmembers." *Jones v. City of Faribault*, No. 18-1643 (JRT/HB), 2021 WL 1192466, at *15 (D. Minn. Feb. 18, 2021) (citing *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 808 (8th Cir. 2013); *see also Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1552 (8th Cir. 1996) (statement "by an individual legislator is not a sufficient basis from which to infer the intent of that entire legislative body."). Rather, Plaintiffs must provide "proof that a majority of the multimember body had the requisite motive" to impute discriminatory animus to the City Council. *See Griggs v. Chickasaw Cty., Mississippi*, 930 F.3d 696, 704 (5th Cir. 2019) (collecting cases).

---

4       *Available online at*: https://www.nytimes.com/2024/08/04/us/minnesota-farm-lino-lakesmosque.html.

Yet, even if Ruhland's intent or motive was relevant, there is not a shred of evidence suggesting he acted with discriminatory animus, much less the kind of evidence Plaintiffs need to meet their burden. In a disparate-treatment case, a "plaintiff must establish that the defendant had a discriminatory intent or motive." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015). A discriminatory intent or motive requires "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Claims alleging "a violation of the Equal Protection Clause under this theory," are coextensive with claims under the FHA. *Mensie v. City of Little Rock*, 917 F.3d 685, 689 (8th Cir. 2019); *Folger v. City of Minneapolis*, 43 F.Supp.3d 922, 937 (D. Minn. 2014). Similarly, where "the claim is invidious discrimination in contravention" of the First Amendment, Plaintiffs "must plead and prove that the defendant acted with discriminatory purpose." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Plaintiffs' own Complaint limits Ruhland's involvement in this suit to actions he took in his official capacity as a member of the Lino Lakes City Council. This is understandable because direct evidence of discrimination "does not include . . . statements by decisionmakers unrelated to the decisional process

11

itself." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). What is far more perplexing is why Plaintiffs brought their claims against Ruhland in his individual capacity.

2. Though Plaintiffs bring their claims against Ruhland in his individual capacity, there is no allegation he had any involvement in his individual personal capacity.

"Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Id.* A suit against an individual government employee in his or her personal capacity, however, requires proof "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs "must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Jones v. City of St. Louis*, 104 F.4th 1043, 1049 (8th Cir. 2024). The same is true under the FHA. 24 C.F.R. § 100.7(a); *see also Brown v. Pfeiffer*, No. 19-CV-3132 (WMW/KMM), 2020 WL 6146614, at *3–4 (D. Minn. Oct. 20, 2020). As already noted, Plaintiffs' own Complaint limits Ruhland's involvement in this suit to actions he took in his official capacity as a member of the Lino Lakes City

12

Council. There is no basis for Plaintiffs' claims against Ruhland in his individual capacity and these claims will ultimately be dismissed.

3. Plaintiffs' claims against Ruhland fail on the merits for additional reasons beyond the foregoing glaring deficiencies.

Even if Ruhland was not entitled to absolute legislative immunity, even if Ruhland's intent or motive was relevant, even if there was not a shred of evidence suggesting Ruhland acted with discriminatory animus, and even if Plaintiffs had not failed to identify a single action Ruhland took in his individual capacity, Plaintiffs' claims would still fail.

The Eighth Circuit has repeatedly rejected claims identical to Plaintiffs'. In *Mensie v. City of Little Rock*, the plaintiff relied on so-called pretext "evidence" just like Plaintiffs here. 917 F.3d 685 (8th Cir. 2019). The Eighth Circuit, however, found plaintiff's claim "must fail," because there was "no basis" for the argument the City relied on "'code words' by crediting" neighbors' legitimate nondiscriminatory concerns. *Id.* at 690–91. Even though one board member later testified she found the neighbors' opposition persuasive, and her motive was dispositive in the resulting 4-to-4 vote, "facially race-neutral statements, without more, do not demonstrate . . . animus on the part of the speaker." *Id.* (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (internal marks omitted)). Indeed, the Court went on to reason, even if it believed legitimate nondiscriminatory concerns "code words," for discriminatory animus "nothing

13

indicates the City itself was improperly motivated by this concern." *Id.; see also, DeWalt v. City of Brooklyn Park, Minnesota*, No. 15-CV-4355, 2017 WL 2178310, at *5 (D. Minn. May 17, 2017) (holding unless a "City council member adopted, relayed, or endorsed the alleged racial bias to the rest of the City Council, . . . these allegations do not provide evidence that the City adopted any neighbors' racial bias, and are insufficient to withstand summary judgment."), *aff'd* 715 Fed.Appx. 580 (8th Cir. 2018). The Court further "reject[ed] any argument that we should infer" discriminatory animus "in the overall comments of [plaintiff's] neighbors to the City in light of their allegedly hostile treatment toward her when she moved into the neighborhood." *Id*. Thus, the Court "decline[d] to impute any implied [animus] from the opposing testimony to the City[,]" and noted, although the Court is "required to make all reasonable inferences in favor of the nonmoving party in considering summary judgment, we do so without resort to speculation." *Id*.

Like the plaintiff's allegations in *Mensie*, Plaintiffs' allegations here do not provide any support for the claim the interim ordinance was adopted with discriminatory animus.

## II. PLAINTIFFS ARE UNLIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

"When determining whether a preliminary injunction should issue, a court must consider . . . the threat of irreparable harm to the movant." *Beber v. NavSav*

14

*Holdings, LLC*, 118 F.4th 921, 928 (8th Cir. 2024). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Id.* at 929. "To demonstrate irreparable harm, the movant must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* Failure "of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction." *Id.*

Plaintiffs' alleged irreparable harm is based entirely on their belief they will succeed on the merits, which as it concerns Defendant Ruhland, is clearly a mistake. *Doc. #15* at 31-32. In truth, Plaintiffs would not suffer any harm by a modest delay to their development proposal, but it is clear Plaintiffs' development proposal has not been delayed in the slightest. It is undisputed Plaintiffs never applied for approval of their proposed development. While they attempt to suggest they submitted an "application seeking approval to develop the Robinson Property[,]" *Doc. #15* at 4, a PUD concept plan merely provides an opportunity for the applicant to show "the basic intent and the general nature of the entire development before incurring substantial cost." CITY OF LINO LAKES, MINN., ZONING ORDINANCE § 1007.024(9)(b).[5] The City does not approve anything in

---

[5]   *Available online at*: https://codelibrary.amlegal.com/codes/linolakes/latest/linolakes_mn/0-0-0-20223

15

response to such an application. Instead, it provides "informal review" and non-binding comments "on the project's consistency with the City's Comprehensive Plan and development regulations." CITY OF LINO LAKES, MINN., ZONING ORDINANCE § 1007.024(9)(b)(3). To manufacture irreparable harm where none exists, Plaintiffs allege the "City may act to extend the Moratorium's 12-month period." *Doc. #9* at 33 ¶168. But the "mere possibility that the moratorium could be extended and thereby affect Plaintiff's First Amendment rights does not demonstrate that Plaintiff is currently suffering irreparable harm." *Cold Dish Enterprises, LLC v. City of Arlington, Minnesota*, No. CIV. 02-609 PAM/JGL, 2002 WL 537645, at *2 (D. Minn. Mar. 29, 2002).

### III. PLAINTIFFS' REQUESTED PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST.

Plaintiffs' decision to include Defendant Ruhland as a party in this action was clearly a means to an end. The end was to bring this motion asking the Court to restrain Defendant Ruhland from performing his legislative duties, which the citizens of Lino Lakes duly elected him to perform. Plaintiffs' thinly-veiled attempt to manipulate the outcome of future actions before the Lino Lakes City Council, by eliminating what it perceives as opposition, is clearly contrary to the public interest.

Moreover, it is contrary to the balanced separation of powers, as the Supreme Court recognized in *Bogan v. Scott-Harris*:

> Absolute immunity . . . finds support not only in history, but also in reason. The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability.

523 U.S. 52–53. Additionally, the Court recognized several other reasons why an injunction, like the one requested by Plaintiffs, would be contrary to the public interest:

> Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability.
>     Moreover, certain deterrents to legislative abuse may be greater at the local level than at other levels of government. Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are often protected by sovereign immunity. And, of course, the ultimate check on legislative abuse—the electoral process—applies with equal force at the local level, where legislators are often more closely responsible to the electorate.

*Id.*

The equities do not favor Plaintiffs' requested preliminary injunction. Plaintiffs' requested preliminary injunction is not in the public interest, Plaintiffs are unlikely to suffer irreparable harm in the absence of preliminary relief, and Plaintiffs' claims against Ruhland are certain to fail.

17

## **CONCLUSION**

For the foregoing reasons Defendant Ruhland respectfully requests the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: November 18, 2024

s/    Jason J. Kuboushek
Jason J. Kuboushek, #0304037
Andrew A. Wolf, #0398589
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN  55438
(952) 548-7200
jasonk@iversonlaw.com
andrew@iversonlaw.com

*Attorneys for Defendant*
*Michael Ruhland, in his*
*individual capacity*