UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Zikar Holdings LLC, Jameel Ahmed, and Faraaz Mohammed,<br><br>Plaintiffs,<br><br>v.<br><br>Michael Ruhland, in his individual capacity, Christopher Lyden, in his individual capacity, and City of Lino Lakes, Minnesota,<br><br>Defendants. | Case No. 24-cv-03721-JMB-SGE<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Defendants offer no evidence to rebut the extensive record showing that (at least) a majority of Lino Lakes' City Council were motived by anti-Muslim bias when they voted to stop Plaintiffs' Madinah Lakes' development. Three of four Councilmembers that voted to adopt the City's Moratorium expressly connected their votes to anti-Muslim statements and sentiments that the law and logic dictate should have had no bearing on their vote. Plaintiffs further demonstrated Defendants' unlawful motives with ample circumstantial evidence of irregularities and actions indicative of discriminatory motives.

In response to this clear evidence, Defendants offer nothing but attorney argument. Defendants were free to submit declarations from their clients (the

1

Councilmembers who voted) disclosing their motives or other potentially relevant evidence. They did not.

Instead, the City offers just one, tepid witness declaration from a non-decisionmaker Michael Grochala. (Dkt. 30.) At first glance, this declaration appears to support some of the City's arguments. However, upon further review, Grochala's declaration is actually further evidence showing that Plaintiffs will succeed on the merits. Without supporting evidence, Defendants' opposition consists of 64 pages of obfuscation and misdirection, mingled with lengthy discussions of irrelevant subjects. This peripheral noise cannot contradict the clear, obvious evidence showing Defendants' unlawful motivation.

The strength and quantum of Plaintiffs' evidence demonstrate is motion should be granted and an injunction should issue. Defendants could only succeed if the Court chooses to simply look the other way. Defendants unlawful motives and anti-Muslim bias demand a remedy.[1]

---

[1] This memo uses abbreviations from Plaintiffs' initial memorandum (Dkt. 15). Exhibits attached to the Baker Decl. will be cited only by their number. (*See* Dkt. 29.)

## ARGUMENT

I. **The City misrepresents Plaintiffs' bruden and fails to acknowledge its own evidentiary burden**

The parties agree that *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), dictates the burdens of proof in this case. However, the City boldly asserts "Plaintiffs ignored…an essential element of the legal analysis of the merits" set forth in footnote 21 of *Arlington Heights* by omitting "a second step of the test for unlawful motivation." (Opp. Mem. at 9, 13.) The City asserts that *Arlington Heights*'s note 21 requires Plaintiffs to not only show that the City had an unlawful motive, but also simultaneously prove that this motive was the "*decisive*" factor in the City's decision. (*Id*. 9-10 (emphasis original).)

The City boldly alleges that Plaintiffs' motion must be denied because they intentionally "ignored…an essential element of the legal analysis," failed to make "a serious effort to carry their real burden," all allegedly in an effort to "sandbag Defendants." (*Id*. 13.) The City is painfully mistaken and reverses the requirements of *Arlington Heights*'s step two.

In reality, Plaintiffs' accurately described their initial burden, which only requires that they show the City's action "was motivated in part by a… discriminatory purpose." *Arlington Heights*, 429 U.S. at 265-66 and 270 n.21. Once Plaintiffs fulfilled this burden, the burden of production and persuasion "shifted to the" City to establish "by a preponderance of the evidence that it would have

3

reached the same decision…even in the absence of" its discriminatory motive. *Id.* at 270 n.21; *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Bibbs v. Block*, 778 F.2d 1318, 1324 (8th Cir. 1985) (Once a plaintiff demonstrates "unlawful discrimination in some respect…the burden of production and persuasion shifts from the plaintiff to the defendant."); *O'Brien v. City of Greers Ferry*, 873 F.2d 1115, 1119 (8th Cir. 1989) (finding if a plaintiff demonstrates a "discriminatory purpose was a motivating factor" in a government decision, the "burden then shifts to the defendant to establish by a preponderance of the evidence that the same decision would have resulted" without consideration of the impermissible purpose).

The City does not acknowledge, let alone attempt to meet its burden. However, even if it tried, it could not demonstrate a lawful motive. Because Plaintiffs have met their burden to show discrimination was a motivating factor, Defendants failure to show it would have adopted the Moratorium without any discriminatory motive ends the analysis and Plaintiffs are entitled to relief. *See Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000).

## II. The evidence easily demonstrates the City's unlawful discrimination

### A. Contrary to the City's arguments, Plaintiffs may demonstrate discrimination through a variety of evidence

Plaintiffs have far more than the minimum evidence demonstrating that anti-Muslim bias motivated a majority of Councilmembers votes in favor of the

Moratorium. The law "does not require a plaintiff to prove that the challenged action rested solely on [unlawfully] discriminatory purposes." *Arlington Heights*, 429 U.S. at 265–66. Moreover, while courts normally "refrain from reviewing the merits of their decisions," once a a plaintiff offers "proof that a discriminatory purpose has been a motivating factor in" a decision, "judicial deference" regarding the merits of a government decision "is no longer justified." *Id.*

Contrary to the law, the City argues that Plaintiffs must have direct evidence showing that a majority of the City Council was motivated by unlawful discrimination. (Opp. Mem. 32-34.) Not so. Courts acknowledge that "[r]arely will legislators make '[o]utright admissions of impermissible…discrimination.'" *Christian Ministerial All. v. Thurston*, 714 F. Supp. 3d 1093, 1096-97 (E.D. Ark. 2024) (Stras, Circuit J., Marshall, J., Moody, J.) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)). Courts recognize that the standard for which the City advocates would normally allow thinly veiled discrimination to go unchecked. *See, e.g.*, *Scamardo v. Scott Cnty.*, 189 F.3d 707, 710 (8th Cir. 1999) (rejecting majority requirement and allowing claim to go to a jury by showing that just two of nine officials had unlawful motives); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 785–86 (2d Cir. 2007) (rejecting majority requirement).[2]

---

[2] Defendants' cases do not change this. *McGautha* (pre-*Scamardo*) addressed when "[m]unicipal liability under 42 U.S.C. § 1983 arises if injury results from action

5

Far from the strict proof demanded by the City, courts will find an "invidious discriminatory purpose was a motivating factor" based on the "circumstantial and direct evidence of intent as may be available" in a case. *Arlington Heights*, 429 U.S. at 266. Among types of evidence that may be considered to prove discriminatory intent are "(1) the discriminatory impact of the action, (2) the historical background of the action, (3) the sequence of events leading up to the challenged action, (4) departures from normal procedural sequences, and (5) departures from normal substantive criteria." *Sunrise Dev., Inc. v. Town of Huntington, New York*, 62 F. Supp. 2d 762, 774 (E.D.N.Y. 1999) (citing *Arlington*

---

pursuant to official municipal policy of some nature." 36 F.3d 53, 55 (8th Cir. 1994). But the evidence showed zero of the alleged actors were "policy makers." *Id.* at 55. Similarly, *Church v. City of Huntsville*: "only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." 30 F.3d 1332, 1342 (11th Cir. 1994) (cleaned up). Again "no evidence" that the Council adopted a single member's statements against homeless persons and the Council did not enact anything in response. *Id.* at 1343. Even though Plaintiffs' have shown a majority intent of animus in this case, regardless—Defendants other cases do not mandate requiring this "majority" to succeed since they had far less: *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006) (not applying a "majority" rule but instead applying a "but for" approach); *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (evidence of only one actor's statements); *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994) (only one actor's "off-duty comments"); *Jeffries v. Harleston*, 52 F.3d 9, 14 (2d Cir. 1995) (pre-*Cine SK8, supra,* and jury expressly found a majority of voting members were not motivated invidiously). Even a minority may include "the important ones" like the "author of the resolution" and it is still provable that the outcome was tainted to become unlawful. *Haka v. Lincoln Cnty.*, 533 F. Supp. 2d 895, 914 (W.D. Wis. 2008) (agreeing with *Cine SK8* and rejecting the "majority" arguments).

6

*Heights*, 429 U.S. at 266). Evidence considered may include the "impact" of the decision or "the decision-making process itself." *Christian Ministerial Alliance*, 714 F.Supp.3d at 1096 Even a departure from "normal procedural sequence" may "suggest 'that improper purposes ... play[ed] a role" in the government's decision. *Id*.

### B. Plaintiffs ample evidence clearly demonstrates that Councilmembers Moratorium votes were motivated by anti-Muslim bias.

The Court's task here is quite straightforward. In fact, while the law does require such a showing, the record evidence includes direct evidence that unlawful anti-Muslim bias motivated a majority of Councilmembers to support the Moratorium Plaintiffs ask the Court to enjoin.

The City appears to concede Lyden's and Ruhland's bias. And while it seeks to defend Mayor Rafferty and Councilmember Stoez, its arguments are just that and fail to address the actual evidence before the Court. The City argues that Plaintiffs' "brief throws many adjectives and other rhetoric at Mayor Rafferty… to make up for the absence of meaningful evidence that his vote in favor of the moratorium was motivated by race or religion…." (Opp. Mem. 39-40.) Consideration of the actual record evidence quickly dispels this argument.

Mayor Rafferty's only comment explaining his vote for the Moratorium repeated spurious public comments criticizing the Muslim "community." Specifically, on July 8 Rafferty explained that he agreed with others who made

7