IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Zikar Holdings LLC, Jameel Ahmed, and Faraaz Mohammed,<br><br>  Plaintiffs,<br><br>v.<br><br>Michael Ruhland, in his individual capacity, Christopher Lyden, in his individual capacity, and City of Lino Lakes, Minnesota,<br><br>  Defendants. | Case No. 24-cv-03721-JMB-SGE<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF LINO LAKES' MOTION FOR PROTECTIVE ORDER** |

## INTRODUCTION

The deadline for completion of fact discovery in this case was October 10, 2025. Shortly before 5:00 p.m. that afternoon, Plaintiffs' counsel emailed Defendants' counsel copies of three third-party subpoenas for deposition and production of documents. Defendant City of Lino Lakes ("the City") seeks a protective order under Rule 26(c) preventing the enforcement of those subpoenas and an award of reasonable expenses (including attorneys' fees) under Rule 37(a)(5) if this motion is successful.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs commenced this lawsuit on September 24, 2024,[1] and filed a verified amended complaint on October 16, 2024.[2] Approximately one week later, Plaintiffs filed a motion for preliminary injunction, which Judge Bryan denied on December 26, 2024.[3]

In the meantime, this Court issued a pretrial scheduling order on December 10, 2024.[4] The scheduling order set a clear deadline for the completion of fact discovery: "The parties must commence fact discovery procedures in time to be completed on or before **October 10, 2025**."[5] No party moved to amend the scheduling order in any respect on or before October 10, 2025, and the parties never stipulated to any such amendment.

At 4:56 p.m. on October 10, 2025 (a Friday), Plaintiffs' counsel emailed Defendants' counsel three PDFs that he represented "will be served" on three

---

[1] ECF 1.

[2] ECF 9.

[3] ECF 42.

[4] ECF 40.

[5] *Id.* at 3 (emphasis in original).

nonparties to the case: Jon Hermann, Randall Rennaker, and Luke Walter.[6] Each PDF packet included a cover letter, a Rule 45 subpoena to testify at a virtual deposition on October 28, 2025, and to produce documents before noon on October 24, 2025, a set of document requests with instructions, and a copy of the stipulated protective order issued in this case (ECF 41).[7]

## ARGUMENT

The Court should forbid Plaintiffs from enforcing the untimely third-party subpoenas. Federal Rule of Civil Procedure 26(c) allows any party to move for a protective order in the context of discovery even if the party is seeking to prevent the enforcement of subpoenas not directed to that party. *See, e.g.*, *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013) (concluding that party, although lacking standing under Rule 45 to quash subpoena, had standing to move for a protective order under Rules 16 and 26); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 445 n.2 (D. Minn. 1997) (concluding that party had standing to seek a protective order under Rule 26(c) to prohibit another party from conducting

---

[6] Swenson Decl. Exs. 1–4. For purposes of this motion, the City assumes that the three subpoenas were served properly on their intended recipients. The City understands that one of the subpoena subjects, Luke Walter, has filed a *pro se* motion to quash and that Walter argues that he was not served effectively. ECF 48.

[7] Swenson Decl. Exs. 2 (subpoena package to Hermann), 3 (subpoena package to Rennaker), 4 (subpoena package to Walter).

3

untimely discovery through subpoenas to nonparty third persons). Courts have broad discretion to enter protective orders as the circumstances warrant. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."); *see also Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) (discussing courts' discretionary power to control discovery, including through use of protective orders). Here, there is (1) good cause to prevent the enforcement of the subpoenas and (2) no good cause to allow Plaintiffs to pursue depositions of and documents from the three non-parties.

I.  **Good cause exists to enforce the deadline for completion of discovery and to protect the City from undue burden.**

Good cause exists for the Court to issue a protective order prohibiting the enforcement of the third-party subpoenas for at least two reasons.

*First*, the Court should protect the City from discovery gone awry—that is, from Plaintiffs' pursuing discovery after the October 10 deadline for such discovery to be completed.[8] *See Marvin Lumber*, 177 F.R.D. at 445 & n.2; *see also Richards v.*

---

[8] It is the City's understanding that Plaintiffs intend to move to re-open discovery, but the fact remains that the deadline came and went without such a motion being filed. Moreover, as addressed in Section II, *infra*, there is no good cause to re-open discovery to allow Plaintiffs to take the depositions of Hermann, Rennaker, and Walter or to request documents from them.

4

*State Farm Fire & Cas. Co.*, No. 24-CV-03192 (JMB/SGE), 2025 WL 2688799, at *3–5 (D. Minn. Sept. 19, 2025) (concurring with Magistrate Judge's ruling quashing untimely third-party subpoena); *Jefferson Pilot Life Ins. Co. v. Marietta Campbell Ins. Grp., LLC*, No. 07-1359 (ADM/RLE), 2008 WL 11349715, at *9 (D. Minn. Apr. 10, 2008) ("Since compliance with the [third-party] Subpoenas could not be effected within the period allowed for discovery, the Subpoenas were unenforceable—much as would be untimely Interrogatories, Requests for Production, and the like. Therefore, the Subpoenas are quashed."); *Jacobson v. Hound Dog Pet Hotel, LLC*, No. 04-3809 (PAM/RLE), 2005 WL 8164434, at *3 (D. Minn. May 23, 2005) (denying motion to compel compliance with third-party subpoena because, among other things, "[a]lthough discovery had not yet officially closed in this matter, when the Plaintiff issued the Subpoena, it was clearly an attempt to circumvent the discovery deadlines, which had been imposed by our Pretrial Schedule and, in doing so, it unnecessarily caused an undue burden to be placed on a non-party").

Indeed, when a party seeks a protective order regarding information sought under Rule 45, the issue becomes "'one of case management under Rules 16 and 26.'" *Shukh*, 295 F.R.D. at 236 (quoting *Marvin Lumber*, 177 F.R.D. at 444). As the court noted in *Marvin Lumber*, to allow a party to continue with formal discovery (including under Rule 45) after the discovery deadline "unnecessarily lengthens

5

[the] discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for Trial, to continued involvement in the discovery, and in the nondispositive [m]otion process[.]" 177 F.R.D. at 445. Moreover, courts have the authority to quash subpoenas *sua sponte* on grounds of untimeliness. *See Galloway v. Islands Mech. Contractor, Inc.*, No. 2008-071, 2013 WL 163985, at *4 (D.V.I. Jan. 14, 2013); *see also FIP Realty Co., Ltd. v. Ingersoll-Rand plc*, No. 2:19-cv-3291, 2020 WL 6060412, at *3–4 (S.D. Ohio Oct. 14, 2020) (citing cases); *see also Sobolik v. Briggs & Stratton Corp.*, No. 09-1785 (JRT/RLE), 2010 WL 11640189, at *7 (D. Minn. July 2, 2010) ("This Court has the inherent power, and the non-delegable duty, to enforce its Scheduling Order in faithful allegiance to the command of Rule 1, Federal Rules of Civil Procedure.").

*Second*, the Court should protect the City from the undue burden of monitoring Plaintiffs' untimely third-party discovery. *See Marvin Lumber*, 177 F.R.D at 445 ("The obligation of a party to monitor an opponent's discovery, as allowed by Rule 45 Subpoenas, is no less burdensome or expensive than that demanded by the other methods of formal discovery[.]"). Counsel for the City arranged their professional and personal schedules in accordance with and in reliance on the scheduling order—which Plaintiffs did not move to amend before the passing of the

6

discovery-completion deadline.[9] The undersigned attorneys have extensive professional commitments between now and mid-December, including but not limited to: an appellate brief due on October 27; interrogatory answers due on October 27; a joint discovery plan due on October 28; a discovery conference that must take place by October 30; a response to Plaintiffs' anticipated discovery motion in this matter by October 31; a moot-court session to prepare national counsel for his November 5 oral argument to the Minnesota Supreme Court; the closure of discovery in a federal case on November 5; mandatory all-firm meetings November 6–8; court-required mediation on November 18; volunteering at the MSBA/Minnesota State Law Library Appeals Self-Help Clinic on November 20; a summary-judgment combined opposition and reply brief due on November 21; an expert report due on November 21; the closure of discovery in a state case on December 5; an oral argument to the Minnesota Court of Appeals on December 10; and a summary-judgment hearing before Chief Judge Schiltz on December 12.[10] Counsel for the City respectfully ask the Court not to burden their already limited

---

[9] Swenson Decl. ¶ 3.

[10] Swenson Decl. ¶¶ 4–5. Most of these are obligations that Mr. Baker and Ms. Swenson have in common. *Id.*

capacity with the responsibility to monitor Plaintiffs' untimely third-party discovery.

## II. Plaintiffs do not have good cause to re-open discovery to take these depositions or to pursue these document requests.

The City anticipates that Plaintiffs will move to re-open fact discovery. But there is no good cause to allow Plaintiffs more time to conduct third-party discovery targeted at Hermann, Rennaker, and Walter. The Court should therefore grant the motion for protective order. *See Sobolik*, 2010 WL 11640189, at *7 (directing plaintiff "to immediately cease and desist in any efforts to enforce" third-party subpoenas where plaintiff "did not serve the Subpoenas sufficiently in advance of the discovery deadline as would allow a response before the close of discovery" and plaintiff "demonstrated no good cause to extend the discovery deadline").

Plaintiffs could have served all three persons (to whom they now direct untimely subpoenas)Fre far enough in advance to comply with the Court's order that discovery be completed by October 10, 2025. To be clear, this is not a situation where Plaintiffs recently learned that Hermann, Rennaker, and Walter might have knowledge or documents relevant to the claims or defenses in this lawsuit. Plaintiffs mentioned Rennaker and Walter by name several times in the original complaint (filed in September 2024) and in the verified amended complaint (filed more than one year ago, on October 16, 2024). For example:

8

- Plaintiffs described Rennaker and Walter as "[l]eaders of the organized opposition to Madinah Lakes;"[11]

- Plaintiffs alleged that Walter "created a group and private Facebook page titled 'LoveLinoLakes' to oppose Madinah Lakes;"[12]

- Plaintiffs alleged that Rennaker and Walter both spoke in opposition to the Madinah Lakes project during the public-comment section of a Lino Lakes City Council meeting on March 25, 2024, and quoted several paragraphs of Walter's remarks;[13]

- Plaintiffs alleged that Walter worked with a City Council member in connection with the moratorium;[14]

- Plaintiffs alleged that Walter attended a June 5, 2024 meeting of the Lino Lakes Park Board "to continue his attacks on [Plaintiff Zikar

---

[11] ECF 1 at 18 (¶ 104); ECF 9 at 19 (¶ 105); *see also* ECF 1 at 13 (¶ 77); ECF 9 at 15 (¶ 80) (describing Walter as "a vocal opponent of Madinah Lakes" and alleging that Walter "organized opposition to the development"). Madinah Lakes is Plaintiffs' proposed project that is at the heart of this lawsuit.

[12] ECF 1 at 13 (¶ 78); ECF 9 at 15 (¶ 80).

[13] ECF 1 at 18 (¶ 104); ECF 9 at 19 (¶ 105); *see also* ECF 1 at 2 (¶ 5); ECF 9 at 2 (¶ 5) (describing Walter as "[t]he opposition's leader" and purporting to quote his comments at the March 25, 2024 City Council meeting).

[14] ECF 1 at 17 (¶ 97); ECF 9 at 18 (¶ 98). Plaintiffs contend that the moratorium was "discriminatory, unlawful, and unconstitutional." ECF 1 at 3 (¶ 12); ECF 9 at 4 (¶ 12).

9

Holdings LLC] and [Plaintiff Faraaz] Mohammed and to demand that a Park Board member recuse himself because the member made a public comment supportive of Madinah Lakes";[15]

- Plaintiffs alleged that Walter attended a June 10, 2024 meeting of the City Council and "spoke against the [Madinah Lakes] project and continued to disparage [Plaintiff] Mohammed," and purported to quote some of what Walter said;[16] and

- Plaintiffs alleged that Rennaker and Walter dined together with a member of the City Council on July 11, 2024 "to celebrate passage of the moratorium."[17]

Plaintiffs also identified Rennaker and Walter (by name and address) in their January 10, 2025 initial disclosures as potential witnesses.[18]

---

[15] ECF 1 at 22 (¶ 120); ECF 9 at 22 (¶ 120).

[16] ECF 1 at 22 (¶ 121); ECF 9 at 22–23 (¶ 121).

[17] ECF 1 at 29 (¶ 143); ECF 9 at 29 (¶ 144).

[18] Swenson Decl. Ex. 6 at 5. In response to an interrogatory requesting identification of "all individuals who have, or claim to have, knowledge of any facts relevant to the issues in this lawsuit," Plaintiffs referred Defendants to Plaintiffs' initial disclosures. Swenson Decl. Ex. 7 at 1–2 (Plaintiffs' Answer to Interrogatory No. 1).

Hermann was also known to Plaintiffs as an opponent of the Madinah Lakes project long before Plaintiffs commenced this lawsuit. Hermann spoke during the public-comment portion of the June 10, 2024 City Council meeting, expressing negative opinions about the Madinah Lakes project, Plaintiff Zikar Holdings LLC, and Plaintiff Mohammed.[19] The very next speaker was Plaintiff Mohammed, who mentioned Hermann by name[20] and accused Hermann of "harassing former business associates of [Mohammed's] repeatedly for the last week under the guise of wanting some work done."[21] At his deposition, Plaintiff Mohammed testified that he had met in person with Hermann at Mohammed's office at some point before the June 10, 2024 City Council meeting.[22] Even if Plaintiff Mohammed somehow forgot about his interactions with Hermann until his deposition on October 8, 2025, Plaintiffs' counsel obtained a recording of the June 10, 2024 City Council meeting and submitted it to Judge Bryan more than one year ago in connection with

---

[19] Swenson Decl. Ex. 8 (Tr. 13 –46).

[20] Swenson Decl. Ex. 8 (Tr. 133–35, 139); Swenson Decl. Ex. 9 at 2. Plaintiff Mohammed also mentioned Walter by name during his time at the podium on June 10, 2024. Swenson Decl. Ex. 8 (Tr. 135).

[21] Swenson Decl. Ex. 8 (Tr. 135). Plaintiff Jameel Ahmed also spoke during the public-comment section of the June 10, 2024 meeting. Swenson Decl. Ex. 9 at 2.

[22] Swenson Decl. Ex. 8 (Tr. 147–49).

11

Plaintiffs' failed motion for a preliminary injunction.[23] In addition, the City produced to Plaintiffs the minutes of that meeting on January 31, 2025, and the videorecording of that meeting on February 13, 2025.[24]

Plaintiffs' counsel made no attempt until the day of the deadline for completion of fact discovery to depose Hermann, Rennaker, or Walter, or to seek documents from them. Given the content of the original and amended complaints, Plaintiffs' initial disclosures, and what was recorded at the June 10, 2024 City Council meeting, Plaintiffs had ample time to conduct third-party discovery directed at Hermann, Rennaker, and Walter.[25] Their failure to do so in a timely manner warrants entry of a protective order. *See Richards*, 2025 WL 2688799, at *5 (concurring with Magistrate Judge's quashing of third-party subpoena where the subpoena "imposed an undue burden on . . . a nonparty, for no discernible reason

---

[23] ECF 17 at 3 (¶ 16) (describing Exhibit W as "a true and correct copy of a video of the June 10, 2024 Lino Lakes City Council meeting" in a declaration filed on October 23, 2024).

[24] Swenson Decl. ¶¶ 6–7.

[25] The Court should reject any argument by Plaintiffs that they launched the subpoenas in response to anything new Plaintiffs might have learned from Defendants' supplemental production on October 10, 2025. Plaintiffs' counsel emailed the subpoenas to Defendants' counsel at 4:56 p.m. on October 10, 2025. Swenson Decl. Ex. 1. But, as Plaintiffs' counsel stated in an email message to the Court later that evening, Plaintiffs' counsel had not yet reviewed any of the supplemental production. Swenson Decl. Ex. 5.

other than [plaintiff]'s counsel's seeming inattention to the discovery deadlines"); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." (quotation marks and citations omitted)); *cf.* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . ."); *Shukh*, 295 F.R.D. at 237 (holding that magistrate judge would have been well within his authority to limit discovery sought under Rule 26(b)(2)(C) even if the defendant seeking a protective order under Rule 26(c) failed to make a showing of good cause).

## CONCLUSION

For the foregoing reasons, Defendant City of Lino Lakes respectfully requests that the Court enter a protective order forbidding Plaintiffs from enforcing the subpoenas directed to Jon Hermann, Randall Rennaker, and Luke Walter. The City respectfully suggests that the order also relieve the subpoena recipients of any obligation to comply with the subpoenas, including responding to the attached

document requests or appearing for any deposition. Should the City prevail on this motion, the City requests under Fed. R. Civ. P. 37(a)(5) that the Court order Plaintiffs and their counsel to pay the City's reasonable expenses incurred in making this motion, including attorneys' fees. *See* Fed. R. Civ. P. 26(c)(3) (stating that Rule 37(a)(5) applies to the award of expenses).

Dated:  October 24, 2025         **GREENE ESPEL PLLP**

*/s/ Katherine M. Swenson*

John M. Baker, Reg. No. 0174403
Katherine M. Swenson, Reg. No. 0389280
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
jbaker@greeneespel.com
kswenson@greeneespel.com
(612) 373-0830

Attorneys for Defendant City of Lino Lakes